# EXHIBIT 11

*[Excerpted]*

March 27, 2025

*Via Email: choughton@reichmanjorgensen.com*

Connor S. Houghton
Reichman Jorgensen Lehman & Feldberg LLP
1909 K Street, NW
Suite 800
Washington, D.C. 20006

  Re: *Valtrus Innovations Ltd et al. v. DataBank Holdings Ltd.*,
     Case No. 2:24-cv-00777 (E.D. Tex.)

Dear Connor:

 We write in response to Valtrus's discovery letters dated January 7 and Mach. 4, 2025, as well as your email dated March 20 regarding DataBank's interrogatory responses.

 In general, we note that this case is still very early in discovery, with claim construction not beginning until Aug. 1, 2024 and the deadline to substantially complete document production is not until November 6, 2025.

*[Excerpted]*

Interrogatories

 DataBank made significant objections to the scope of Valtrus's interrogatories in its Objections and Responses served on March 20, 2025, primarily to the extent that the interrogatories seek information regarding unaccused suppliers and unaccused software and equipment which are outside the scope of the allegations contained in Valtrus's infringement contentions. Valtrus has not identified what unaccused software or equipment would be relevant to the existing claims of infringement or identify particular components, characteristics or elements of the software or equipment that would allow DataBank to identify any other potentially relevant cooling systems and technology, to the extent any are being used at all. However, DataBank is currently gathering information regarding the suppliers, and their software and equipment, that have been identified by Valtrus within their Infringement Contentions and their use within DataBank's data centers. DataBank will be providing this information shortly.

*[Excerpted]*

Inspections

 With regard to inspections it seems that Valtrus is putting the cart before the horse and trying to choose the most expensive route possible. We understand that Vertiv has previously offered to

1

make the source code for its iCOM and iCOM-S systems available for inspection, and Vertiv has sent a letter explaining to Valtrus why their software does not and cannot infringe as Valtrus has alleged. A trip to any number of DataBank datacenters will not result in Valtrus inspecting this code, and while Valtrus can certainly take pictures of equipment, that does not help Valtrus or DataBank in the slightest. We request that you first inspect Vertiv's software and equipment to understand how it does not infringe prior to inspecting DataBank's data centers.  If after such inspection, Valtrus chooses to proceed with this litigation we can arrange for Valtrus to come look at a few facilities. The same is requested for inspections of the software and equipment of the other accused suppliers, including Automated Logic, Schneider, Trane, and Motivair. We are willing to assist in facilitating these inspections with the respective suppliers.

Categories of Documents for Production

With respect to Valtrus's letter addressing the categories of requested documents, DataBank stated in its Initial and Additional Disclosures Discovery is in its early stages and DataBank is continuing its investigation and document collection. DataBank has already made a production of relevant technical documents and will produce additional documents that are relevant to Plaintiff's claims and DataBank's defenses through investigation and discovery. DataBank is currently working on collecting relevant documents and is endeavoring to make a forthcoming production.  However, the categories identified in your letter, however, are in many respects, overly broad, unduly burdensome and disproportionate to the needs of the case, particularly with respect to unaccused suppliers and equipment.  DataBank makes the following objections and responses to the requested categories of documents:

*[Excerpted]*

5. Documents sufficient to identify all cooling systems and technology, and suppliers of those cooling systems and technology, that DataBank has made, used, offered for sale, and/or imported into the United States, in any data centers including by code name, internal name, project name, marketing name, version number, and any other designation used in connection with each such product. These documents should specify, for each data center, all cooling equipment that is used in each such center, any suppliers of the equipment, when such equipment began being used in those data centers, and if any equipment is no longer used, when such use stopped.

    *Response:* DataBank objects to this Category as a blatant fishing expedition that is facially overbroad and unduly burdensome, as it is neither narrowly tailored to the needs of the case nor reasonably calculated to lead to the discovery of admissible evidence. DataBank specifically objects as to "all" cooling systems and technology used in DataBank's data centers, which would include suppliers and their equipment and software that are not specifically identified or accused of infringement in the allegations contained in Valtrus' Infringement Contentions. The scope of discovery does not extend to unaccused products. Valtrus has not identified what unaccused cooling systems and technology would be relevant to the existing claims of infringement or identify particular components, characteristics or elements of the software or equipment that would allow DataBank to identify any other potentially relevant cooling systems and

2

technology, to the extent any are being used at all. DataBank further objects to the scope of this Category as being indefinite in time, as it potentially extends beyond the relevant period for damages for the alleged infringement of the Asserted Patents. Pursuant to, and without waiving the foregoing objections, DataBank will provide non-objectionable documents concerning the suppliers and their cooling systems and technology specifically identified within Valtrus' Infringement Contentions that are in DataBank's possession, custody, or control.  The production of a document is not an admission that DataBank uses any such equipment or software identified within Valtrus's Infringement Contentions.

*[Excerpted]*

7. Documents sufficient to identify each of DataBank's customers for data center space, including documents showing the price each customer paid in a lease or other agreement and any costs that were passed on to customers by DataBank.

   *Response:* DataBank objects to this Category as overbroad and unduly burdensome, as it is neither narrowly tailored to the needs of the case nor reasonably calculated to lead to the discovery of admissible evidence. DataBank specifically objects that this is exceedingly overbroad due to the vast number of customer contracts that is has in place. DataBank further objects that the identity of DataBank's customers and the pricing/costs has no relevance to Valtrus's claims or DataBank's defenses asserted in this case.  DataBank also specifically objects to the extent Valtrus seeks information regarding data centers that do not contain the software and equipment specifically identified by DataBank in its Infringement Contentions.

8. Documents sufficient to show DataBank's revenues, costs, and profits from all DataBank or Zayo Group data centers during the relevant time period, including documents showing such financial information for each DataBank data center.

   *Response:* DataBank objects to this Category as overbroad and unduly burdensome, as it is neither narrowly tailored to the needs of the case nor reasonably calculated to lead to the discovery of admissible evidence. DataBank specifically objects to the extent Valtrus seeks information regarding data centers that do not contain the software and equipment specifically identified by DataBank in its Infringement Contentions.  DataBank further objects to the scope of this Category as being indefinite in time, as it potentially extends beyond the relevant period for damages for the alleged infringement of the Asserted Patents.  DataBank further objects to the relevance due to Valtrus's licensing model used in comparable licenses based on the square footage of the data centers, and requests Valtrus to explain how this financial information would be relevant.

9. Documents sufficient to show the quarterly energy usage and costs at each of DataBank's data centers identified in Category 2, including information relating to DataBank's energy usage specifically for cooling its data centers.

   *Response:* DataBank incorporates the objections for Categories 1 and 2. DataBank further objects to the scope of this Category as being indefinite in time, as it potentially extends beyond the relevant period for damages for the alleged infringement of the Asserted

Patents. DataBank further objects to the relevance due to Valtrus's licensing model used in comparable licenses based on the square footage of the data centers, and requests Valtrus to explain how this financial information would be relevant. Pursuant to, and without waiving the foregoing objections,

*[Excerpted]*

\* \* \* \*

DataBank is gathering the non-objectionable information discussed above and we intend to make a production and supplement the initial disclosures within the next few weeks. Our intent is to make a production by April 25, 2025. Please advise if Valtrus would be willing to wait to discuss until after DataBank provides this information to revisit any remaining of Valtrus's concerns. Otherwise, let us know when you would be available to discuss the remaining issues and our objections next week on or after April 1, 2025.

Sincerely,

Brett M. Pinkus