# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| VALTRUS INNOVATIONS LTD. and KEY PATENT INNOVATIONS LTD., <br><br> *Plaintiffs,* <br><br> v. <br><br> DATABANK HOLDINGS, LTD., <br><br> *Defendant.* | § § § § § § § § § § § § | CIVIL ACTION NO. 2:24-CV-00777-JRG <br> (LEAD CASE) |
| VALTRUS INNOVATIONS LTD. and KEY PATENT INNOVATIONS LTD., <br><br> *Plaintiffs,* <br><br> v. <br><br> TIERPOINT, LLC., <br><br> *Defendant.* | § § § § § § § § § § § § | CIVIL ACTION NO. 2:24-CV-00776-JRG <br> (MEMBER CASE) |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Compel Defendant Databank Holdings, Ltd.'s Compliance with the Court's Discovery Rules (the "Motion to Compel") filed by Plaintiffs Valtrus Innovations Ltd. and Key Patent Innovations Ltd. (collectively, "Plaintiffs"). (Dkt. No. 36.) Also before the Court is the Motion for Protective Order filed by Defendant DataBank Holdings, Ltd. ("DataBank"). (Dkt. No. 38.)

Having considered the Motion to Compel (Dkt. No. 36) and related briefing, the Court finds that it should be **GRANTED-IN-PART and CARRIED-IN-PART**. Having considered the Motion for Protective Order (Dkt. No. 38) and related briefing, the Court finds that it should be **DENIED**.

I.  **DISCUSSION**

The Motion to Compel and the Motion for a Protective Order overlap in many respects. In the Motion to Compel, Plaintiffs move to compel DataBank to (1) identify its cooling equipment and suppliers; (2) produce certain financial information; and (3) produce its energy and electricity usage information. (Dkt. No. 36 at 3-7.) Plaintiffs also seek their attorneys' fees for the Motion to Compel. (*Id.* at 7.) In the Motion for a Protective Order, DataBank seeks an order preventing Plaintiffs from compelling the same information they seek in the Motion to Compel. (Dkt. No. 38 at 3-7.) DataBank also moves for protection from Plaintiffs' request to inspect the accused data centers. (*Id.* at 4-6.)

A.  **DataBank's Failure to Comply with the Court's Orders**

Before proceeding with the merits of the motions, the Court addresses DataBank's failure to comply with this Court's Standing Order and the Discovery Order in this case. The Court's orders explicitly state that "Attachments to a discovery related motion, or a response thereto, shall not exceed 5 pages." (Standing Order Regarding "Meet and Confer" Obligations Relating to Discovery Disputes;[1] Dkt. No. 30 ¶ 9(b).) The attachments to DataBank's Motion for Protective Order total over fifty pages—well over the five-page limit. (*See* Dkt. No. 38-1–38-15.) DataBank never moved for leave to exceed the page limit. Therefore, DataBank is confined to the page limit imposed by the Court's orders.

Accordingly, the Court **STRIKES** all attachments that exceed the five-page limit—Dkt. Nos. 38-2–38-15—and the Court did not consider them in regard to the Motion for Protective Order. The Court's orders are not recommendations. The Court expects all parties to fully and faithfully review, understand, and comply with this District's Local Rules and this Court's orders.

---

[1] https://www.txed.uscourts.gov/sites/default/files/judgeFiles/Standing%20Order%20Regarding%20Meet%20and%20 0Confer%20Obligations%20for%20Discovery%20Dispute.pdf.

2

Disregarding such rules and orders, under appropriate circumstances, may require an imposition of sanctions. The Court trusts that this warning will not be lost on DataBank and its counsel.

### B. Identification of Cooling Equipment and Suppliers

Plaintiffs move to compel DataBank "to fully respond to [Plaintiffs'] interrogatory and produce documents regarding the identity of the cooling equipment used in the accused data centers." (Dkt. No. 36 at 3-4.) Plaintiffs contend that the asserted patents relate to methods of cooling data centers. (*E.g.*, Dkt. No. 36 at 3.) Plaintiffs assert that DataBank's data centers directly infringe "by operating cooling equipment and software." (*Id.*) Plaintiffs contend that their Complaint and infringement contentions "identified exemplary infringing methods based on publicly available information about DataBank's cooling equipment supplier." (*Id.*)

DataBank moves for protection and responds that Plaintiffs seeks to expand the scope of their allegations by seeking discovery into suppliers and products they did not specifically identify in their infringement contentions. (Dkt. No. 38 at 3-4; Dkt. No. 41 at 3-4.) DataBank argues that Plaintiffs are "not entitled [to] discovery of all products that it believes may be 'reasonably similar' to the Identified Accused Products without []providing a proper predicate." (Dkt. No. 38 at 3-4; *see also* Dkt. No. 41 at 3-4.) DataBank asserts that Plaintiffs should first "identify any reasonably similar equipment that is allegedly infringing and the basis therefore . . . ." (Dkt. No. 41 at 4; *see also* Dkt. No. 38 at 4-5.) DataBank further argues that Plaintiffs have not established that the information they seek is not publicly available. (Dkt. No. 41 at 4; *see also* Dkt. No. 38 at 4.)

The Court finds that Plaintiffs are entitled to discovery regarding the identification of cooling equipment DataBank uses in its data centers that is reasonably similar to the cooling equipment Plaintiffs specifically identified in their infringement contentions. Discovery is not limited to only the products a plaintiff specifically identified in its infringement contentions. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is

3

relevant to any party's claim or defense . . . ."). A plaintiff may also seek discovery concerning products that are "reasonably similar" to the accused products in the case if (1) the infringement contentions gave notice of a specific theory of infringement and (2) the products it seeks discovery of operate in a manner reasonably similar to that theory. *See Honeywell Int'l, Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 655 (E.D. Tex. 2009); *see also Semcon IP Inc. v. Amazon.com, Inc.*, No. 2:18-cv-00192, Dkt. No. 89 (E.D. Tex. July 16, 2019). Therefore, Plaintiffs are entitled to discovery into reasonably similar products if Plaintiffs gave notice of a specific theory of infringement in their infringement contentions and the products for which they seek discovery operate in a manner reasonably similar to that theory.

Regarding DataBank's argument that it should not be compelled to produce information about cooling equipment because the existence of those products is publicly available, the Court does not find that argument persuasive. The fact that information is publicly available does not absolve DataBank of its discovery obligations. *See GeoTag, Inc. v. Frontier Commc'ns Corp.*, No. 2:10-cv-00265-JRG, 2013 WL 12141427, *1 (E.D. Tex. June 26, 2013). Further, Plaintiffs have alleged, and the Court recognizes, that the discovery Plaintiffs seek relates to information that is not publicly available. Plaintiffs allege that DataBank's data centers infringe the asserted method claims by operating cooling equipment and software in its data centers. The Complaint identifies exemplary infringing methods based on publicly available information about DataBank's cooling equipment suppliers. Plaintiffs seek information regarding DataBank's cooling equipment suppliers that is not publicly available, and, without discovery, Plaintiffs cannot adequately accuse such equipment of infringement. While DataBank contends "there are only a limited number of suppliers of cooling equipment for data centers that exist," the Court will not require Plaintiffs to, essentially, guess which additional cooling equipment suppliers DataBank might use.

4

Therefore, DataBank must fully respond to Plaintiffs' interrogatory and produce documents regarding the identity of all reasonably similar cooling equipment used in the accused data centers, to the extent Plaintiffs gave notice of a specific theory of infringement in their infringement contentions and that the cooling equipment for which it seeks discovery operates in a manner reasonably similar to that theory. Accordingly, this portion of Plaintiffs' Motion to Compel is **GRANTED**, and this portion of Databank's Motion for Protective Order is **DENIED**.

C.   **Financial Information**

Plaintiffs move to compel DataBank to produce its revenues, costs, and profits from operating each of its accused United States data centers. (Dkt. No. 36 at 5.) Plaintiffs argue that this information is relevant to calculating a reasonable royalty. (*Id.*)

DataBank moves for protection and responds that the requested financial information is not relevant because it "obtains revenue through licensing, leasing, and/or service agreements for customers to use its data centers, not sales of the accused equipment or software." (Dkt. No. 41 at 4-5.) DataBank argues that Plaintiffs have failed to explain how its revenue and profit "is tied to the *use* of the Identified Accused Products as compared to the sale of the products, as well as to the use of unaccused and non-infringing products." (Dkt. No. 38 at 6-7 (emphasis added by DataBank); *see also* Dkt. No. 41 at 4-5.) DataBank also argues that the Court should not compel the production of this financial information because the comparable licenses are not based on revenue or profits. (Dkt. No. 38 at 7.)

The Court finds that DataBank's revenues, costs, and profits from operating each of its accused United States data centers are relevant to at least Plaintiffs' damages claim. While the financial information sought may cover non-infringing products, this information is still relevant and discoverable. How and to what extent that information needs to be apportioned is best left for expert discovery. Regarding DataBank's arguments that the comparable licenses limit the scope of

5

discovery, the Court disagrees. Comparable licenses are one of the *Georgia-Pacific* factors; however, comparable licenses do not limit the scope of what financial information is relevant.

Therefore, DataBank must produce business and financial information related to DataBank and its United States data centers, including, but not limited to, Categories 7-9 as identified in DataBank's Motion for Protective Order. Accordingly, this portion of Plaintiffs' Motion to Compel is **GRANTED**, and this portion of Databank's Motion for Protective Order is **DENIED**.

D. **Energy and Electricity Usage Information**

Plaintiffs move to compel DataBank "to produce its energy and electricity usage information for the accused data centers." (Dkt. No. 36 at 6-7.) Plaintiffs argue that "[b]ecause the benefits of the Asserted Patents relate to reduced energy and electricity consumption and spending, information about DataBank's usage is directly relevant to [Plaintiffs'] damages claims." (*Id.*)

DataBank moves for protection and responds that Plaintiffs' "general statements do not demonstrate how energy usage is tied to the use of allegedly infringing features of the accused products, and further how it would be distinguished between allegedly infringing and non-infringing products." (Dkt. No. 41 at 5; *see also* Dkt. No. 38 at 7.) DataBank asserts that it "does not track energy or electrical usage, cost or savings for individual products within its data centers, which does not allow for comparing the same for the use of one product versus another." (Dkt. No. 41 at 5.)

The Court finds that energy and electricity usage information is relevant to at least Plaintiffs' damages claim. Plaintiffs assert that a benefit of the asserted patents is the reduction of energy and electricity consumption and spending. This benefit goes to at least *Georgia-Pacific* factors 9 and 10. Whether DataBank maintains this information on an individual product level or a data center level, this information as it currently exists is relevant to the parties' claims and defenses.

6

Therefore, DataBank must produce its energy and electricity usage information for the accused data centers. Accordingly, this portion of Plaintiffs' Motion to Compel is **GRANTED**, and this portion of Databank's Motion for Protective Order is **DENIED**.

### E. Site Inspections

DataBank moves for protection regarding Plaintiffs' request to inspect DataBank's data centers. (Dkt. No. 38 at 4-6.) DataBank argues that inspections are unnecessary, disproportional to the needs of the case, and raise confidentiality issues. (*Id.* at 4-5.) DataBank also argues that Plaintiffs should inspect the suppliers' source code before conducting site inspections. (*Id.* at 5-6.)

Plaintiffs respond that it is entitled to inspect DataBank's data centers. (Dkt. No. 42 at 5-6.) Plaintiffs assert they intend "to gather evidence during the inspections to support [their] infringement claims and further show how DataBank infringes the asserted patents." (*Id.*) Plaintiffs argue that source code review "is not a prerequisite to data center inspections." (*Id.* at 6.) Plaintiffs also argue that the Court's protective order covers DataBank's confidentiality concerns. (*Id.*)

Rule 34 provides that a party may request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). Rule 34 further provides that "[t]he request: (A) must describe with reasonable particularity each item or category of items to be inspected; [and] (B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts . . . ." Fed. R. Civ. P. 34(b)(1). It is unclear from both the Motion for Protective Order and Plaintiffs' response exactly what Plaintiffs seek to undertake as part of such a site inspection. Databank makes a cursory statement that Plaintiffs seek to inspect over seventy data centers, yet, notably, neither party has provided the Court with Plaintiffs' Rule 34 request. While a site inspection is perhaps

7

reasonable and necessary in this case, the Court cannot comfortably rule based on scant attorney argument.

Accordingly, the Court declines to grant DataBank's request for protection as it is unclear what exactly Plaintiffs have sought and, thus, what DataBank seeks protection from. This request is **DENIED WITHOUT PREJUDICE**.

    **F.**    **Attorneys' Fees**

Plaintiffs also seek attorneys' fees related to bringing the Motion to Compel. (Dkt. No. 36 at 7.) DataBank does not respond to this request in its opposition. (*See generally* Dkt. No. 41.)

Rule 37(a)(5)(A) provides that if a court grants a motion to compel, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion," unless the movant failed to attempt in good faith to obtain the discovery without court intervention, the non-disclosure was substantially justified, or other circumstances make such an expense award unjust. Fed. R. Civ. P. 37(a)(5)(A).

Accordingly, within 14 days of this Order, DataBank must file a response setting forth its position on the award of expenses and fees pursuant to Rule 37(a)(5)(A).

**II.**    **CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiffs' Motion to Compel (Dkt. No. 36) should be and hereby is **GRANTED** as set forth above. The Court **CARRIES** Plaintiffs' request for attorneys' fees as set forth above. The Court also finds that DataBank's Motion for Protective Order (Dkt. No. 38) should be and hereby is **DENIED** as set forth above. Further, the Court **STRIKES** Dkt. Nos. 38-2–38-15. Databank is **ORDERED** to supplement its interrogatory responses and produce the documents discussed above within **fourteen (14) days** of the date of this Order. DataBank is **ORDERED** to file a response setting forth its position on the award of

8

.

expenses and fees pursuant to Rule 37(a)(5)(A) within **fourteen (14) days** of the date of this Order, and such response shall not exceed five (5) pages.

The parties are directed to jointly prepare a redacted version of this Opinion for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Opinion.

**So ORDERED and SIGNED this 15th day of May, 2025.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE